UNITED STATES of America,
Plaintiff-Appellee,

v.

Wayne BARBER, Defendant-Appellant.

No. 78–1915.

United States Court of Appeals,
Ninth Circuit.

March 12, 1979.

Rehearing Denied May 2, 1979.

ute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and for unlawfully carrying a firearm during the commission of a felony in violation of 18 U.S.C. § 924(c)(2). Barber contends that the evidence was insufficient to sustain his conviction for violating 18 U.S.C. § 924(c)(2) because the Government failed adequately to prove that he was "carrying" a firearm "during" the commission of a federal felony within the meaning of the statute, that the Government deprived him of effective assistance of counsel in cross-examining a defense witness, and that the district court erred in refusing to enforce a discovery order.

Roberts, a government undercover agent, arranged to buy a large quantity of cocaine from Barber's co-defendant Daniels. Arrangements were made to complete the sale at the San Diego Airport on November 10, 1977. Co-defendant Fultz agreed to deliver a one-pound installment of cocaine from his suppliers. To inspect the sample, Roberts entered a Jaguar automobile, driven by Barber, and asked Barber, and his passenger, co-defendant Langley, whether they had a pound of cocaine. Langley handed the cocaine to Roberts, who thereafter conducted a field test on the cocaine. Roberts then left the Jaguar to pick up the purchase money, instructing Fultz to deliver the cocaine to him where Fultz had parked his Cadillac. After Roberts obtained the cocaine from Fultz, he started to walk away with it and with his briefcase of purchase money. Fultz yelled at Roberts, and Roberts gave the arrest signal. After a high-speed chase, Fultz was arrested in the Cadillac. Other surveilling agents saw Barber driving the Jaguar rapidly out of the area with its lights out. Pursuant to an all-points bulletin issued for the Jaguar, Barber was stopped and arrested by California Highway Patrol Officers an hour later. After his arrest, the Jaguar was searched and a .22 Derringer was found in the locked glove compartment. Neither Barber nor

John J. Robinson, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., Bruce R. Castetter, Asst. U. S. Atty. (ar-

Sheldon Sherman (argued), San Diego, Cal., for defendant-appellant.

Before ELY and HUFSTEDLER, Circuit Judges, and LYDICK,* District Judge.

HUFSTEDLER, Circuit Judge:

Barber appeals from his conviction for conspiring to possess with intent to distrib-

---

* Honorable Lawrence T. Lydick, United States District Judge, Central District of California, sitting by designation.

his co-defendants has a permit to carry a concealed weapon.

Following a guilty verdict on the cocaine and gun counts, Barber was given concurrent sentences on the cocaine counts, but his sentence on the gun count was made consecutive to the cocaine sentences.

## I

In pertinent part, 18 U.S.C. § 924(c)(2) provides:

> "(c) Whoever . . . (2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States, shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment . . .."

■ To establish a violation of Section 924(c)(2), the Government must prove that the defendant (1) knowingly (2) carried a firearm (3) unlawfully (4) during the commission of a federal felony.

■ Although the statute does not expressly mention any mental element in stating the offense, "knowledge" or "willfulness," meaning knowledge of the facts constituting the offense, is ordinarily implied. (*Morissette v. United States* (1952) 342 U.S. 246, 252, 72 S.Ct. 240, 96 L.Ed. 288; *Pena-Cabanillas v. United States* (9th Cir. 1968) 394 F.2d 785, 788.) All that is meant by this rudimentary mental element is that the defendant voluntarily and intentionally did the act or acts charged.[1] In recognition of this principle, the indictment charging Barber with an offense under Section 924(c)(2) averred that Barber "knowingly" carried the firearm and the jury was accordingly instructed.

■ To prove that Barber actually knew that the Derringer was in the glove compartment, the Government offered evidence, not only that Barber was driving the vehicle containing the firearm, but also evidence that papers belonging to both Barber and Langley were found in the same glove compartment. Barber tried unsuccessfully to rebut this evidence by the testimony of JoAnne, Barber's former girl friend, who testified that she owned the Jaguar and that she had acquired the Derringer from an unidentified third person who asked her to take the gun for repairs. She also testified that she had placed the gun in the glove compartment sometime late in October or the first week in November and that she left the gun in the vehicle when she gave the Jaguar to Mr. Barber to repair the car. The jury did not credit JoAnne's testimony, which was thoroughly impeached. From the Government's evidence, the jury was entitled to infer that Barber was fully aware of the presence of the gun in the glove compartment. His use of the Jaguar, under circumstances that gave him access to the glove compartment, together with his papers and those of Langley in the compartment with the gun permitted the jury properly to infer that he knew that the gun was in the glove compartment.

■ Barber also argues that the word "carries," as used in the statute, connotes only the concept of bearing the weapon upon one's person or having the gun within his immediate control. Although Congress never specifically addressed the question whether the term "carries" was intended to encompass "transports" or "possesses," we think that the ordinary meaning of the term embraces Barber's transportation of the weapon. In ordinary usage, the verb "carry" includes transportation or causing to be transported. Nothing in the legislative history indicates that Congress intended any hypertechnical or narrow reading of the word "carries." (*See United States v. Ramirez* (2d Cir. 1973) 482 F.2d 807, 813–14.)[2]

---

1. Of course, many crimes require highly sophisticated levels of abstraction to engender criminal culpability. (*See generally* Dubin, *Mens Rea* Reconstructed, 18 Stan.L.Rev. 332 (1966); Packer, Mens Rea and The Supreme Court, 1962 Sup.Ct.Rev. 107 (1962).)

2. Although we have not been able to find a case in which this issue was directly raised and decided, we have quoted without disapproval a jury instruction that a "defendant is considered to have carried the firearm if he conveyed, transported or took the firearm with him un-

■ Barber next contends that the Government did not produce sufficient evidence to show that he was carrying the firearm during the time he was committing a federal felony. He relies upon the fact that the gun was not discovered until he was taken into custody, about an hour after he participated in the abortive drug sale. Although enough time elapsed from Barber's drug transaction with Roberts until Barber was taken into custody to permit a third person to put the gun in the glove compartment, the jury had ample evidence before it to conclude that the gun had been in the automobile throughout Barber's drug negotiations and his subsequent flight. If the jury credited that part of JoAnne's testimony that she put the gun in the glove compartment, it could appropriately have concluded that there was no third person involved. Moreover, apart from her testimony, the jury could have inferred that no one other than Barber and Langley would have had a reasonable opportunity to put the gun in the glove compartment during the critical events. After Roberts gave the arrest signal, Barber and his co-defendants were fleeing with officers in hot pursuit. Under these circumstances, the jury could readily have concluded that Barber would not have had either the inclination or the opportunity to acquire a gun and put it in the glove compartment before he was arrested.[3]

## II

■ Barber complains that the Government improperly cross-examined JoAnne about her relationship with Barber's trial lawyer.[4] On cross-examination, the prosecutor brought out the fact that Barber's ex-girl friend JoAnne was living with Barber's trial lawyer at the time of trial. This bizarre circumstance revealed to the jury that JoAnne had more than one reason for bias or prejudice. However, we cannot say that there was any governmental impropriety in revealing that ground for bias during cross-examination.

Nothing on the face of this record supports Barber's contention that the Government's impeachment of JoAnne on the ground of her relationship to Barber's trial lawyer deprived Barber of effective assistance of counsel. The Government bore no responsibility for defense counsel's residential arrangements nor for his decision to call JoAnne as a witness in Barber's defense. We have little doubt that the effective cross-examination did not improve defense counsel's stature in the eyes of the jury, but this record supplies us with no basis for accepting Barber's contention that the Government improperly impaired the effectiveness of counsel.[5]

## III

■ Barber's remaining contentions require only the briefest mention. He claims that the district court abused its discretion in refusing to dismiss the indictment and in refusing a continuance when the Government refused to furnish defense counsel with a copy of a government agent's testimony before the grand jury. Without objection by the Government, the Government had been ordered to submit the names of witnesses whom it intended to call as part

---

lawfully during the commission of a Federal felony." (*United States v. Dixon* (9th Cir. 1977) 558 F.2d 919, 921, n.1.)

**3.** The evidence was more than sufficient to prove that Barber's transporting the Derringer in the glove compartment was "unlawful," and Barber does not contend otherwise. The Government proved all the elements of California Penal Code § 12025 (West's 1978 Supp.) that, with exceptions not here pertinent, makes it a crime for a person to carry "concealed within any vehicle which is under his control or direction any . . . firearm capable of being concealed upon the person without having

a license to carry such firearm . . . ." ( *See, e. g., People v. Jurado* (1972) 25 Cal. App.3d 1027, 102 Cal.Rptr. 498.)

**4.** Trial counsel does not represent Barber on appeal.

**5.** JoAnne's testimony was also impeached by proving that she had given an entirely different version of the facts to an FBI agent in which she had denied any knowledge of the weapon. Moreover, the evidence also showed that title to the Jaguar was not transferred to JoAnne until long after Barber was arrested.

of its case-in-chief, and with respect to those witnesses, the Government was to supply the grand jury testimony of each. Agent Hicks' name had appeared on the initial list submitted by the Government. Thereafter, however, the Government decided not to call Hicks; accordingly, the Government did not supply Hicks' grand jury testimony for pretrial inspection by Barber. The order did not compel the Government to produce any witness nor did it order the Government to supply a grand jury transcript with respect to any uncalled witness. The district court found that there had been substantial compliance with discovery orders; our examination of the record convinces us that the district court was correct.

AFFIRMED.