**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jerry NELSON, Defendant-Appellant.**

**No. 82–2482.**

United States Court of Appeals,
Fifth Circuit.

May 18, 1984.

Albert S. Low, Jr., Houston, Tex., for defendant-appellant.

James R. Gough, Houston, Tex., for plaintiff-appellee.

Before RANDALL, TATE and WILLIAMS, Circuit Judges.

RANDALL, Circuit Judge:

For his role in conspiring to kill a federally-protected witness, defendant-appellant Jerry Nelson was sentenced to ten years in prison. He now appeals his conviction. Because we find no grounds for reversal, we affirm.

I. FACTUAL BACKGROUND.

In early 1979, Randy Cunningham, an undercover agent for the Treasury Department's Bureau of Alcohol, Tobacco and Firearms (ATF), began investigating an arson ring in Houston, Texas. Peter Kalfas became a key source of information in Cunningham's investigation. Beginning in August, 1979, Kalfas told Cunningham about several of the arson ring's members' activities, including those of Raymond Conti, who agreed to burn down Kalfas' place of business for ten per cent of Kalfas' insurance proceeds.

Once Conti discovered that Kalfas was cooperating with federal authorities and was giving them information about the ring, he began to plot to have Kalfas killed. Conti's efforts began in October, 1979, when he asked Billy Earl Jones to kill Kalfas, and when Conti himself began to stake out Kalfas at Babe's Hair Design, the beauty shop where Kalfas worked. Although Conti made several attempts to kill Kalfas, none was successful because Kalfas was under the protective surveillance of Cunningham and other ATF agents.

Kalfas provided Cunningham with evidence relating to state law violations, which was passed on to local law enforcement officials. Conti was arrested late in 1979. Kalfas continued to provide Cunningham with information about Conti's and the rest of the ring's activities, and was scheduled to testify at Conti's state court trial.

In January, 1980, Conti contacted Jones again and asked him to kill Kalfas for $25,000. In March, 1980, Jones contacted Nelson, and offered to pay him $20,000 for killing Kalfas. When Nelson expressed surprise at how much he would be paid, Jones explained to him that the price was high because Kalfas was a federal witness under the protection of federal agents. Nelson agreed to kill Kalfas, and Jones gave Nelson his .38-caliber revolver.

On March 12, 1980, Nelson offered Charles Garrett $15,000 to kill Kalfas. Garrett agreed, and, the next day, Nelson introduced Garrett to Herman Tinkle. Nelson had hired Tinkle to drive the car for the shooting. At the time that Nelson introduced Garrett to Tinkle, Nelson showed Garrett the butt of a pistol hidden under his windbreaker. Jones then drove up to the bar where Nelson, Garrett, and Tinkle were meeting and brought in a shotgun that was wrapped in a sheet. Jones gave the shotgun to Nelson, and the gun was put into the trunk of Tinkle's blue Dodge automobile.[1] Nelson gave Garrett his pistol, and Garrett put the pistol under the front seat of Tinkle's car.

1. There was conflicting testimony at trial as to who placed the shotgun into the trunk of Tinkle's car. Tinkle testified that Nelson put the shotgun in the trunk. Record Vol. 11 at 110. Garrett, however, testified that when Jones and Nelson left the bar and walked to Tinkle's car, it was Jones who carried the gun and placed it in the trunk. Record Vol. 12 at 34.

2. 18 U.S.C. § 371 provides:
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

After Nelson gave Tinkle twenty dollars for gas, Tinkle and Garrett followed Nelson to an Academy Surplus store, where Tinkle bought some shotgun shells. Tinkle and Garrett then followed Nelson to Babe's Hair Design, where Kalfas was working. Nelson pointed out Kalfas to Tinkle and Garrett and identified him as the man who "needed to be shot."

Because Kalfas was continuing to provide information to Cunningham, Kalfas was under constant surveillance. Cunningham saw Tinkle and Garrett watching Kalfas and told Kalfas to leave the shop and drive to a certain location in Shenandoah, Texas, so that Cunningham could see whether Tinkle and Garrett would follow Kalfas. Kalfas left the beauty shop and was followed by Tinkle and Garrett, who were in turn followed by Cunningham and another ATF agent. Nelson also left the shop, but did not follow Tinkle and Garrett.

Tinkle and Garrett were arrested at the Shenandoah location, and the agents confiscated the pistol and shotgun found in Tinkle's car. Nelson was arrested later.

II. PROCEDURAL HISTORY.

A four count indictment was returned against Nelson. Count One of the indictment alleged that Nelson conspired to obstruct the communication of information by Kalfas to a federal agent, in violation of 18 U.S.C. §§ 371 and 1510 (1982).[2] Count One also charged that Nelson conspired to injure Kalfas for giving information to a

18 U.S.C. § 1510 provides that:

(a) Whoever willfully endeavors by means of bribery to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator shall be fined not more than $5,000, or imprisoned not more than five years, or both.
(b) As used in this section, the term "criminal investigator" means any individual duly authorized by a department, agency, or armed force of the United States to conduct or engage in investigations of or prosecutions for violations of the criminal laws of the United States.

federal agent, also in violation of sections 371 and 1510. Count Two alleged that Nelson, aided and abetted by Garrett, knowingly and unlawfully carried firearms during the commission of a felony, in violation of 18 U.S.C. § 924(c)(2) (1982).[3] Counts Three and Four charged that Nelson, a convicted felon, knowingly and unlawfully received firearms that had been transported in interstate commerce, in violation of 18 U.S.C. §§ 922(h) and 924(a) (1982).[4]

Nelson was indicted together with Tinkle and Garrett. The three defendants filed a motion to suppress certain evidence, which the district court granted in favor of Tinkle and Garrett, but not Nelson. On appeal, we reversed that part of the district court's order granted in favor of Tinkle and Garrett, but affirmed the district court's denial of Nelson's motion to suppress. *See United States v. Tinkle*, 655 F.2d 617 (5th Cir. 1981), *cert. denied*, 455 U.S. 924, 102 S.Ct. 1285, 71 L.Ed.2d 467 (1982). Nelson was tried alone and convicted on all four counts. Nelson was sentenced to five years imprisonment on all four counts, with the sentences on Counts One and Two to run consecutively, and the sentences on Counts Three and Four to run concurrently with the sentence on Count One.

## III. ISSUES ON APPEAL.

On appeal, Nelson attacks his conviction on all four counts. Most of his arguments lack merit, and none requires reversal. Before we reach the arguments he makes

regarding each count, we address a procedural issue that Nelson raises concerning the exercise of his peremptory challenges.

### A. Nelson's Peremptory Challenges.

Nelson contends that he was improperly restricted in the exercise of his peremptory challenges, in violation of Fed.R.Crim.P. 24(b). Under rule 24(b), Nelson was entitled to ten peremptory challenges.[5] Following the *voir dire*, the court recessed for thirty minutes to allow each side to mark their peremptory challenges on the list of prospective jurors provided to them by the court. Nelson was removed from the courtroom during all but the last five minutes of the recess. When he returned to the courtroom, he discussed with his attorney the jurors he wanted stricken from the list.

Once trial resumed, the names of the jurors that had been selected to serve on the jury were read to the court. After the names of the jury were read, Nelson's counsel approached the bench and informed the court that Nelson had just told him that he wanted Juror Collum to be taken off the panel. Nelson's attorney explained to the court that when he and Nelson discussed during the recess the jurors Nelson wanted to be struck, Nelson had mentioned Collum, but his attorney did not understand that Nelson wanted Collum to be one of his ten peremptory challenges. As a result, Nel-

---

**3.** 18 U.S.C. § 924 provides, *inter alia:*
 (c) Whoever—
 \* \* \* \* \* \*
 (2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States,
shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years.

**4.** 18 U.S.C. § 922 provides, *inter alia:*
 (h) It shall be unlawful for any person—
 (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

 \* \* \* \* \* \*
to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 924 provides, *inter alia:*
 (a) Whoever violates any provision of this chapter ... shall be fined not more than $5,000, or imprisoned not more than five years, or both ....

**5.** Fed.R.Crim.P. 24 provides in pertinent part:
 (b) *Peremptory Challenges....* If the offense charged is punishable by imprisonment for more than one year, the government is entitled to 6 peremptory challenges and the defendant ... to 10 peremptory challenges....

son's attorney failed to strike Collum's name off of the jury list.[6]

Because the jury had not yet been sworn, Nelson's attorney asked the court to replace Collum with the next juror on the list. The government objected, however, arguing that this would allow Nelson eleven strikes, one more than is allowed by rule 24(b). The court agreed, and denied Nelson's request to strike Collum.

■ We find no error in the district court's refusal to strike Collum. Rule 24(b) makes it clear that Nelson was entitled to ten peremptory strikes, which he exercised. Our previous opinions make it clear that the defendant is entitled to no more. *See, e.g., United States v. Franklin,* 471 F.2d 1299, 1300 (5th Cir.1973); *Estes v. United States,* 335 F.2d 609, 615 (5th Cir.1964), *cert. denied,* 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965). Nelson was present during the *voir dire* of the jury, and was able to confer with his counsel regarding his ten peremptory challenges. The fact that Nelson failed to communicate to his attorney that he wanted a particular juror struck did not entitle him to exercise an additional challenge in contravention of rule 24(b).[7]

6. Nelson's attorney marked eleven names in red ink on the list of prospective jurors provided to him by the court. Although Collum's name was one of those names struck in red, counsel also wrote in black ink "OK" next to Collum's name. The court clerk counted the other ten names struck in red as Nelson's ten peremptory challenges. Record Vol. 1 at 93. At trial, Nelson's attorney indicated that he did not know that Nelson wanted to have Collum struck until after counsel had submitted his list of ten strikes and the jury had been seated. Record Vol. 10 at 59. Thus, based on this admission and the manner in which Collum's name was struck on the jury list, the district court determined that Nelson's attorney had not intended that Collum be one of Nelson's ten peremptory challenges.

Nelson's attorney also struck one additional name in red, but this was clearly indicated as *his one peremptory challenge to an alternate juror* under Fed.R.Crim.P. 24(c).

7. Nelson also contends that because he was in custody during part of the time that his attorney marked his peremptory challenges, his rights under Fed.R.Crim.P. 43(a) were violated, and, thus, his conviction must be reversed. First, we note that although Nelson was absent during part of the recess during which his counsel

## B. Sufficient Evidence of Nelson's Intent to Violate 18 U.S.C. § 1510.

■ Nelson contends next that his conviction for conspiracy under 18 U.S.C. § 371 must be reversed because the government failed to prove that he had the requisite intent to violate the underlying substantive statute, that of obstructing justice under 18 U.S.C. § 1510.[8] Section 1510 authorizes criminal punishment of anyone who "willfully endeavors by means of ... intimidation, force or threats to obstruct ... or prevent the communication of information relating to a violation of any [federal criminal statute] to a criminal investigator ...." [9] "Criminal investigator" is defined to mean any person authorized by the federal government to investigate violations of federal criminal laws.

■ Nelson argues that there was insufficient evidence to show that he conspired to kill Kalfas to prevent him from giving federal authorities further information concerning Conti's arson activities. Specifically, Nelson contends that the government failed to prove that he knew Kalfas was

exercised his peremptory strikes, Nelson's attorney's failure to strike Collum's name did not occur because of Nelson's absence, but rather because Nelson failed to communicate to his counsel that he wanted to strike Collum. Moreover, at trial Nelson's attorney did not object to Nelson's absence nor did he seek any additional time from the court during which to consult with his client regarding his peremptory challenges. Finally, we believe that Nelson had a sufficient opportunity to consult with his counsel regarding his strikes, and thus Nelson's absence during part of the recess was harmless error. *See, e.g., Henderson v. United States,* 419 F.2d 1277, 1278 (5th Cir.1970). *See also United States v. Dumas,* 658 F.2d 411, 413–14 (5th Cir. 1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982); *United States v. Dominguez,* 615 F.2d 1093, 1096 n. 4 (5th Cir.1980).

8. To sustain a conviction on a charge of conspiracy to violate a federal statute, the government must prove the same degree of criminal intent necessary for the commission of the substantive offense itself. *United States v. Feola,* 420 U.S. 671, 686, 95 S.Ct. 1255, 1264, 43 L.Ed.2d 541 (1975).

9. *See supra* note 2.

part of a federal investigation. Nelson insists that he knew only that Kalfas was prepared to testify at Conti's state court trial.

Viewing the evidence in the light most favorable to the government, we believe there was sufficient evidence to show that Nelson knew that Kalfas was involved in a federal investigation and that the conspiracy to kill Kalfas was to prevent him from talking to federal agents in the future.

At trial, Jones testified that he told Nelson that Kalfas was a federal witness and that Kalfas was under the protection of federal agents.[10] Thus, the jury could have reasonably inferred that because Nelson knew that Kalfas was being protected by federal agents, he was participating in a federal criminal investigation.[11] According to *United States v. San Martin*, 515 F.2d 317, 320–21 (5th Cir.1975), the jury need only have a reasonable basis to infer that the purpose of the defendant's act was to deter future communication. *See also United States v. Thetford*, 676 F.2d 170, 181 (5th Cir.1982). Furthermore, because Nelson knew that Kalfas was scheduled to testify against Conti in the future, we think that the jury also could have inferred that Nelson believed that Kalfas would continue to be a willing informer in the federal investigation that had already led to state charges against Conti, and that by killing Kalfas, Nelson would also prevent Kalfas from further confiding in ATF agents in the future. Similarly, we believe that the jury could have also inferred that the conspirators wanted to have Kalfas killed because he had informed the agents about Conti's crimes.

 Nelson also argues that the government proved not a single conspiracy, as alleged in the indictment, but rather a series of small independent conspiracies to kill Kalfas. Nelson contends that he was unfairly prejudiced by the admission of evidence of those independent conspiracies in

which he was not a participant. This argument is devoid of merit. The government presented sufficient evidence to establish that a single conspiracy existed among the persons who participated in the conspiracy to kill Kalfas. There is no requirement that the defendant have participated in every aspect or transaction involved in the conspiracy in order to find a single conspiracy. *See, e.g., United States v. Perez*, 489 F.2d 51, 62 (5th Cir.1973), *cert. denied*, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). The evidence indicates that all the parties were working together to achieve a single purpose as required by *Perez*. *See* 489 F.2d at 61.

Conti contacted Jones in October, 1979, and later in January, 1980, to hire him to kill Kalfas. Jones then met with Nelson, and asked him to kill Kalfas for $20,000. Nelson accepted Kalfas' offer and hired Garrett and Tinkle to carry out the mission. Nelson went with Garrett and Tinkle to buy shotgun shells for the job, and he identified Kalfas to them a short time later. Thus, the evidence showed careful planning and cooperation among Conti, Jones, Garrett, Tinkle, and Nelson in a single conspiracy designed to result in Kalfas' death. *See also United States v. Cuesta*, 597 F.2d 903, 918 (5th Cir.), *cert. denied*, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979) (single conspiracy found where plan to hinder government's investigation did not take the form of one joint action, but rather multiple actions for the purpose of achieving one overall objective).

## C. Nelson's Knowledge that Garrett was a Convicted Felon.

Nelson also attacks his conviction on Count Two, that of carrying firearms unlawfully under 18 U.S.C. § 924(c)(2). To establish a violation of section 924(c)(2), the government must prove that the defendant carried a firearm unlawfully during the commission of a federal felony. Count

**10.** Record Vol. 11 at 167.

**11.** Nelson stipulated that Kalfas was giving information to Cunningham from August 7, 1979, to March 13, 1980 (the day Tinkle and Garrett were arrested), and that Kalfas continued to provide information after March 13, 1980.

**370**

Two alleged that Nelson, aided and abetted by Garrett, carried firearms unlawfully during the conspiracy to obstruct a criminal investigation.

The parties stipulated that Nelson was a convicted felon, and thus, under 18 U.S.C. app. 1202(a) (1982), it would be unlawful for Nelson to possess a firearm that had traveled or been transported in interstate commerce. The jury was instructed that if it found that Nelson carried either of the firearms found in Tinkle's car during the commission of the conspiracy, the government would have proved its case under section 924(c).

Moreover, because Count Two alleged that Nelson had been aided and abetted by Garrett, the court instructed the jury that if it found that Garrett carried either of the firearms in the furtherance of the conspiracy, it could find Nelson guilty on Count Two, since Garrett acted under Nelson's instructions.[12] Both parties also stipulated that Garrett was a convicted felon and could not lawfully carry a firearm that had moved through interstate commerce. Furthermore, both sides stipulated that, at the time of his arrest, Garrett was carrying a handgun, a .38-caliber revolver, in violation of Tex.Penal Code Ann. § 46.02(a) (Vernon 1974).[13]

Nelson argues that because the jury was instructed that he could be found guilty on Count Two if it found that Garrett carried either of the firearms while carrying out the conspiracy, the government was re-quired to prove that Nelson knew that Garrett was a convicted felon, which it failed to do. Nelson argues that without proof that Nelson knew Garrett was a convicted felon, Nelson did not know that it was unlawful for Garrett to carry a firearm and thus Nelson lacked the requisite intent to be convicted under this alternate theory.

■ We have never held that the government must prove that the defendant knew that his or her act of carrying a firearm was unlawful in order to sustain a conviction under section 924(c)(2). To the contrary, our past decisions make it clear that the government need only show that while the felony was in progress, the defendant was carrying a firearm in violation of any firearms law. *See, e.g., United States v. Pozos,* 697 F.2d 1238, 1243 (5th Cir.1983); *United States v. Nanez,* 694 F.2d 405, 411 (5th Cir.1982), *cert. denied,* — U.S. —, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983); *United States v. Elorduy,* 612 F.2d 986, 990 (5th Cir.), *cert. denied,* 447 U.S. 910, 100 S.Ct. 2997, 64 L.Ed.2d 861 (1980).[14]

■ We do not imply that there can be a total absence of *mens rea* in a conviction under section 924(c)(2). We agree with the Ninth Circuit's holding in *United States v. Barber,* 594 F.2d 1242, 1244 (9th Cir.), *cert. denied,* 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979), that the government does have to prove that the defendant knowingly carried a firearm in order to sustain a conviction under section

**12.** 18 U.S.C. § 2 (1982) provides in pertinent part:

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Thus, if the acts or conduct of an agent, employee or other associate of a defendant are willfully directed by him, the law holds the defendant responsible for the acts and conduct of such other persons just as though he had committed the acts or engaged in such conduct himself.

**13.** Tex.Penal Code Ann. § 46.02(a) provides: "A person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun ...."

**14.** For instance, in *United States v. Pozos, supra,* the defendant was tried and convicted in the United States District Court for the Western District of Texas. There, Judge Rubin noted that "[t]o prove a violation of 18 U.S.C. § 924(c)(2) (1976), the government must demonstrate that the act of carrying the firearm violated a state, federal or local law. Under applicable state law, anyone carrying a handgun is guilty of a crime unless that person [proves he or she] falls within specific exceptions.... '[A]bsent such proof, the government need only show that a defendant was carrying a firearm while committing a felony to establish a *per se* violation of 18 U.S.C. § 924(c)(2).'" *Id.* at 1243 (quoting *United States v. Nanez,* 694 F.2d 405, 411 (5th Cir.1982) ) (citations omitted).

$924(c)(2).$[15] Nelson does not complain that there was insufficient evidence to prove that he knowingly carried a firearm during the conspiracy. Similarly, we believe that in order to convict Nelson on the theory that Garrett aided and abetted Nelson, the government had to prove that Nelson knew that Garrett was carrying a firearm while the latter was carrying out the directions of the former. Nelson does not suggest that the government failed to prove this either. But to say that the government has to prove that Nelson knew that his or Garrett's carrying a firearm was unlawful, or that Nelson knew that Garrett was a convicted felon, goes too far, since such a showing of knowledge is not required by the words of the statute. Furthermore, we have found no cases to support the proposition that Nelson urges.[16] Thus, Nelson's conviction on Count Two is affirmed.

## IV. CONCLUSION.

Based on the reasons set forth above, we affirm the judgment of the district court.[17]

AFFIRMED.

---

**15.** Nelson argues that *United States v. Barber, supra,* supports his argument that the government must prove that the defendant knew that he (or his or her agent) was carrying a firearm unlawfully during the commission of a felony in order to satisfy 18 U.S.C. § 924(c)(2). *Barber* did not so hold. In that case the Ninth Circuit held that the government only had to show that the defendant "knowingly" carried a firearm. Such a holding is a far cry from requiring the government to prove that the defendant knowingly carried a firearm, *and* that he or she knew that such an act was unlawful.

**16.** In this same vein, the Seventh Circuit held in *United States v. Oliver,* 683 F.2d 224, 229 (7th Cir.1982), that "knowledge of the defendant that he is violating the law is not an essential element for a violation of 18 U.S.C. § 922(h) or 18 U.S.C. app. § 1202(a)." Section 922(h) makes it unlawful for a convicted felon to receive a firearm or ammunition that has been shipped in interstate commerce. Section 1202(a) makes it unlawful for a convicted felon to possess such a firearm. Similarly, in *United States v. Moschetta,* 673 F.2d 96, 100 (5th Cir.1982), we held that in proving a defendant received or possessed a firearm not registered to him or her in violation of 26 U.S.C. § 5861(d), the government did not need to prove that the defendant knew that the weapon was unregistered.

**17.** Nelson also contends there was insufficient evidence to sustain his conviction on Counts Three and Four. The concurrent sentence doctrine makes it unnecessary for us to review Nelson's convictions on these other two counts. *See, e.g., United States v. Montemayor,* 703 F.2d 109, 114 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).