928 F.2d 405
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mario O. LEWIS and Michael T. May, Defendants-Appellants.
 Nos. 90-1786, 90-1799.
 United States Court of Appeals, Sixth Circuit.
 March 20, 1991.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, No. 89-50075; Newblatt, J.
 E.D.Mich.
 AFFIRMED IN PART AND REMANDED IN PART.
 Before RYAN and ALAN E. NORRIS, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 1. Gun Charges.
 
 
 2
 In December of 1989 undercover police in Flint, Michigan, approached a suspected drug house for the purpose of making a buy of cocaine. Prior to entering the house, a police officer spoke to Cedric Handy, a minor, whose testimony was later elicited at the sentencing phase of the case following conviction of defendants, Mario Lewis and Michael May.
 
 
 3
 May and Lewis, the latter carrying an AK-47 rifle, met the undercover officer inside the house where, May took the officer's money and gave her a small quantity of crack cocaine. A later search of the house, after this transaction, revealed the AK-47, the money used by the undercover officer, ammunition and other firearms.
 
 
 4
 A four count indictment was returned against Lewis and May, charging them with: (1) distribution of cocaine (and aiding and abetting); (2) use of a firearm during a felony; (3) as to May only, possession of a firearm by a felon (later dismissed); and (4) as to Lewis only, possession of a firearm by a felon. On April 9, 1990, a jury returned guilty verdicts on all three charges.
 
 
 5
 At sentencing, the district court judge imposed the same sentence of 151 months against both defendants. May was found to be responsible for 50 to 150 grams of cocaine; Lewis was held responsible for 150 to 500 grams of cocaine. The district court heard the testimony of Handy at sentencing, the testimony of Lewis, and considered the presentence reports. In addition to the fraction of a gram of cocaine, for which the defendants were convicted, the district court found it appropriate to include cocaine which was transported from Detroit and sold by Handy in Flint with the help of Lewis and May. Handy testified that May drove him from Detroit to Flint to sell cocaine once in 1989. Handy testified that Lewis had done this on five or six occasions. Lewis himself confirmed that there were at least five trips. Handy's testimony as to the exact number of times and amount of cocaine transported was equivocal. Since one ounce amounts to about 28 grams, carrying two ounces for one trip would result in over 50 grams and six trips of only one ounce would involve 150 grams. Both defendants object to the quantity of cocaine considered as relevant conduct in determining the sentence. May also contends that there was insufficient evidence to convict him of the gun charge, which involved a minimum sentence of five years.
 
 
 6
 May argues that the trial court should have acquitted him of the firearm offense convictions on the basis of insufficiency of evidence. May argues that since he did not control the AK-47 and since the weapons recovered under the search warrant were not found near him, that there was not enough evidence linking him to the weapons for conviction. It is true that the undercover officer testified that only Lewis actually handled and brandished the firearm.
 
 
 7
 As May acknowledges, however, the district court was required to view the evidence and all reasonable inferences in the light most favorable to the government. Glasser v. United States, 315 U.S. 60 (1942); United States v. Reed, 821 F.2d 322, 325 (6th Cir.1987); United States v. Adamo, 742 F.2d 927 (6th Cir.1984), cert. denied sub nom. Freeman v. United States, 469 U.S. 1193 (1985). "[T]here must be substantial evidence as to each element of the offense from which a jury could find that the accused is guilty beyond a reasonable doubt." United States v. Orrico, 599 F.2d 113, 117 (6th Cir.1979).
 
 
 8
 May argues that since he did not touch the weapon that the government must meet the substantial evidence test under a theory of aiding and abetting, citing United States v. Nelson, 733 F.2d 364 (5th Cir.), cert. denied, 469 U.S. 937 (1984). We find Nelson to be readily distinguishable and that there was ample evidence to indicate that May fully appreciated the presence of the firearm while he was completing the drug transaction. The weapon involved was an assault rifle, the two defendants were in the same room together, and there is testimony that Lewis motioned towards May with the gun.
 
 2. Relevant Conduct in Sentencing
 A. Mario Lewis
 
 9
 We are satisfied that the district court committed no error with respect to the sentence imposed upon Lewis. Handy's testimony that he and Lewis were friends over a period of years was confirmed by Lewis, who acknowledged that he knew others who supplied cocaine for sale in Flint, and that he was paid to drive Handy to Flint on five occasions. While Lewis denied that he assisted in selling cocaine, he knew Handy realized as much as $2,000 a trip for his part in selling it, and Lewis acknowledged that he himself used cocaine on a daily basis. The jury had ample basis to conclude that Lewis assisted at the drug house in Flint by carrying an assault rifle. The court stated that it intended to sentence at the low end of the guidelines because the guidelines penalty was harsh. We have no problem with the court's disposition as to defendant Lewis based on a relevant conduct involvement of at least 150 grams.
 
 B. Michael May
 
 10
 We also find no error in the court's determination of guilt and the sentence imposed upon May with respect to involvement with the firearm wielded by his associate, Mario Lewis.
 
 
 11
 It is with respect to the sentence for other drug involvement imposed upon May that we have difficulty. Only seventeen-year old Cedric Handy testified about May's involvement other than the indictment episode involving a fraction of a gram of cocaine. There was no other evidence relating to May's cocaine activity at Flint or elsewhere. Handy testified that they usually took from Detroit to Flint about $2500 worth of cocaine to sell. He also testified that "two ounces would cost about approximately $5000 worth." He indicated on another occasion that he brought up one or two ounces at a time, and that Lewis transported him and helped him on six trips ("he would watch over my back").
 
 
 12
 Handy testified that once May brought him to Flint to pick up a truck that was at Flint and impounded for want of proper license plates ("he was the only one that had a [driver's] license"). Handy "guessed" that May saw cocaine Handy had put in his car the only other time May was involved with one of the trips from Detroit to Flint; but he also conceded on this point, "I really can't recall."[1]
 
 
 13
 At a later point in his testimony, Handy observed "as I say Mike [May] wasn't really involved. He wasn't involved," and he never paid May for the one trip in which cocaine was involved. He "guessed" Gary Smith paid him.
 
 
 14
 We do not question that May should be charged for his role in the indictment offense and should be held accountable for any other drugs seen or found at the house at which the controlled buy was made. This would total, however, less than a gram of cocaine. The district court's conclusion as to the additional amount of cocaine involved in the relevant conduct of May (beyond that charged in the indictment) is subject to a preponderance of the evidence standard of review. United States v. Miller, 910 F.2d 1321 (6th Cir.1990); United States v. Bronaugh, 895 F.2d 247 (6th Cir.1990); United States v. Silverman, 889 F.2d 1531 (6th Cir.1989).
 
 
 15
 The government argues that May should be accountable under the guidelines for "conduct of others in furtherance of the execution of the jointly undertaken criminal activity that was reasonably foreseeable by the defendants." The government never charged May with being involved in a conspiracy. It merely charged him with aiding and abetting Lewis in the sale of a small quantity of cocaine and with possessing a rifle in connection with that sale. The district court held that "May is accountable for the acts that were part of the same course of conduct or common scheme or plan. The amount of drugs used in determining the offense level is based only on the occasions where Mr. May was present with Mr. Handy, not on other occasions." We find no error in this determination by the district court.
 
 
 16
 We have recited what the record reflects as to the times May was actually present with Lewis or with Handy. We think it clear that May was present and jointly involved only in the indictment offense and on one other occasion where cocaine was transported. We find no error in holding May accountable for the single other trip, even though the record is not absolutely clear or convincing that he actually knew that he was then transporting cocaine. It is reasonable to infer that May knew that he was transporting cocaine then even though Handy thought him "not really involved."
 
 
 17
 Before finally passing upon the sentence in this case, the district court observed that he agreed with defense counsel that the guidelines in this situation were "far too severe." He thought his sentence of May was "harsh" but apparently believed he was imposing a sentence "called for by the guidelines at the lowest level." (Emphasis added). He even stated to May and his counsel that "the sentence I impose I do not consider to be necessarily appropriate."
 
 
 18
 Under the circumstances indicated, we believe that the district court was erroneous in finding that May was accountable for cocaine in an amount of at least fifty grams. The preponderance of the evidence does not support a finding of as much as fifty grams for the single trip here involved. We find it error to conclude that May's relevant conduct and indictment conduct exceeded thirty grams in this case (an ounce plus the fraction involved in the indictment). Our decision is guided by the language in United States v. Walton, 908 F.2d 1289, 1302 (6th Cir.), cert. denied, 111 S.Ct. 532 (1990):
 
 
 19
 We believe that the guidelines do not permit the district court to hold a defendant responsible for a specific quantity of drugs unless the court can conclude the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible. If the exact amount cannot be determined, an estimate will suffice, but here also a preponderance of the evidence must support the estimate. Thus when choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution.
 
 
 20
 (Emphasis added).
 
 
 21
 The district court did a creditable job in this difficult case where relevant conduct virtually swallows up the indictment offense to augment geometrically the resulting guidelines sentence. We have found it error under the circumstances of highly ambivalent testimony from a minor co-participant for the district court not to have acted, and estimated, on the "side of caution."
 
 
 22
 We, accordingly, REMAND the case of Michael May for resentencing in conformity to the principles herein set out. We AFFIRM in other respects, including the weapons charges and the sentences imposed on the defendants.
 
 
 
 [1]
 The crack cocaine was hidden so that police who stopped them did not find it. Handy said it was "about at least $1100 worth." This would be about a half an ounce which was supplied by Gary Smith in Detroit. Handy did not weigh the cocaine deliveries himself