**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Felipe Serrano HERNANDEZ,**
**Defendant–Appellant.**

**No. 93–1996.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 17, 1993.

Decided Jan. 3, 1994.

David S. Rosenbloom, Asst. U.S. Atty. (argued), Brian W. Blanchard, Office of the U.S. Atty., Cr. Div., and Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Cr. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

John M. Cutrone (argued), and Kevin E. Milner, Law Offices of Kevin E. Milner, Chicago, IL, for defendant-appellant.

Before PELL, CUDAHY, and EASTERBROOK, Circuit Judges.

PELL, Circuit Judge.

Felipe Serrano Hernandez (Serrano) seeks the reversal of his conviction for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). He contends that the evidence against him was insufficient to support a conviction because the key government witness, Evelia Maria Fregoso Palomino (Fregoso), lacked credibility.

In August 1992, Serrano and Fregoso flew from Los Angeles to Chicago's O'Hare airport in adjacent seats. When they deplaned at O'Hare, four Chicago police officers assigned to the Drug Enforcement Administration (DEA) task force observed them entering the gate area together. According to the testimony of one agent, Serrano looked around the gate area as though he were looking for someone while Fregoso appeared confused. The two began walking through the terminal, Serrano leading by several feet and looking around frequently as he walked. On the escalator down to the baggage claim area, they conversed in Spanish.

Once Serrano and Fregoso reached the baggage claim area, they stood somewhat apart. They waited approximately five or ten minutes before any luggage appeared on the carousel. Serrano paced back and forth for another five or ten minutes while Fregoso remained seated. Eventually, Serrano walked over to Fregoso and said something to her. At that point they left the baggage claim area without claiming any luggage. Serrano was carrying nothing and Fregoso was holding a purse.

Two DEA agents followed Serrano and Fregoso out to the taxi loading area and began interviewing them. Serrano claimed that he met Fregoso on the plane and that they were not travelling together. He showed the agents an airline ticket that was bought with cash that morning in the name of Felipe Serrano. He produced identification in the name of Felipe Serrano Hernandez. Fregoso produced identification in her own name, but the name "Serrano/Macias" was written on her airline ticket envelope and the boarding pass inside was issued in the name of Guadalupe Macias. When the agents asked about the discrepancy, Fregoso indicated that she did not speak English and said "Not mine." From that point, Serrano translated for Fregoso.

Serrano and Fregoso agreed to accompany the agents back to the baggage claim area where one of the agents removed three unclaimed suitcases from the carousel. The baggage claim tickets revealed that all three suitcases had been checked consecutively. Two suitcases were made of the same material and both had baggage claim tickets issued to Guadalupe Macias. One of them also had an identification tag with the name and address of Felipe Serrano. Attached to the third suitcase was another baggage claim ticket issued to Guadalupe Macias. Both Serrano and Fregoso denied ownership of the suitcases and claimed that they had not checked any luggage.

During this time, Serrano's posture was rigid, his face was stiff, and he repeatedly shifted his balance from one foot to the other. Fregoso's hands were shaking and she appeared as though she was about to cry. After being told that they were free to go,

Serrano and Fregoso left together in a taxi. They checked into a nearby hotel under Serrano's name, paid cash and left without checking out. After obtaining a search warrant, the agents executed a search of the unclaimed suitcases and found six kilograms of cocaine in one of them.

The following day, a separate group of DEA task force agents at Midway airport observed Serrano and Fregoso. Serrano was seen purchasing tickets with cash and appeared nervous. An agent approached them and asked about their travel plans. Serrano showed him a ticket issued to Maria Gonzalez and another issued to Agrello Diaz. The agent asked why Serrano's identification did not coincide with his airline ticket and Serrano explained that he was traveling under an alias because of his encounter with the agents at O'Hare the previous evening. At that point, the agents at both airports compared notes and arrested Serrano and Fregoso. Serrano was carrying over $600 in cash, a set of cards with Chicago phone numbers and beeper numbers written on the back of them, and receipts made out to "Antonio Gonzalez" at the same address as Serrano's luggage identification tag.

Fregoso eventually entered into a plea agreement under which she testified at trial. Fregoso testified that she was from Mexico, but she had moved to the United States seven years earlier. She met Serrano at a restaurant in California and went out dancing with him once. Because she was attracted to him, she agreed to accompany him on a trip even though she did not know where he had invited her to go. She claimed that she did not know where Chicago was at the time, but she believed it was in California. Fregoso stated that she packed one suitcase and that by coincidence it was made of the same material as the one that contained the cocaine, which was Serrano's. She testified that Serrano drove them to the airport in her car and she denied having told a DEA agent that someone else had driven them. She

stated that Serrano had given her a ticket in the name of Guadalupe Macias telling her that traveling under a different name was no problem. Serrano had also asked her to check all three suitcases.

Fregoso maintained that she was completely ignorant of the fact that one of the suitcases contained drugs, but she admitted that she began to suspect that Serrano was transporting drugs when he told her they would not claim their luggage. She explained her conduct at the airport by claiming that she did everything Serrano told her to do without objection because she had become afraid.

Following the jury trial, Serrano was found guilty of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 154 months' imprisonment and fined $4 million.

 In evaluating an appeal challenging the sufficiency of the evidence, we consider all the evidence and all reasonable inferences that can be drawn from the evidence in the light most favorable to the government. *United States v. Jairo Soto–Rodriquez*, 7 F.3d 96, 99 (7th Cir.1993). We must affirm the verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Unless there is no evidence from which a conviction could be reached, the verdict will stand. *United States v. Beverly*, 913 F.2d 337, 360 (7th Cir.1990), *cert. denied*, 498 U.S. 1052, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991). Where the verdict is reached by a jury, we must "defer to reasonable inferences drawn by the jury and the weight it gave to the evidence." *Id.*

 In order to prove possession with intent to distribute cocaine, the government must prove beyond a reasonable doubt that the defendant: 1) knowingly or intentionally possessed cocaine; 2) possessed cocaine with the intent to distribute it; and 3) knew the cocaine was a controlled substance. *United States v. Durades*, 929 F.2d 1160, 1168 (7th Cir.1991). Serrano claims that the government failed to prove that he knew the suit-

case contained cocaine or that he possessed the cocaine.[1] He contends that but for Fregoso's incredible testimony that he was responsible for bringing both her and the cocaine to Chicago, he would not have been convicted.

■■■ In narcotics cases, knowledge must often be proved by circumstantial evidence. *United States v. Valencia,* 907 F.2d 671, 678 (7th Cir.1990). In order to prove possession, the government need only demonstrate that the defendant had constructive possession of the contraband. *United States v. Martinez,* 937 F.2d 299, 305 (7th Cir.1991). Constructive possession is established when the evidence sufficiently demonstrates ownership, dominion, or control. *Id.* (citing *United States v. Galiffa,* 734 F.2d 306, 316 (7th Cir.1984)). The government must prove that the defendant had the ability to exercise control over the cocaine or the power to possess it. *United States v. Molinaro,* 877 F.2d 1341, 1348 (7th Cir.1989). The exercise of control need not be exclusive to support a finding of possession. *Martinez,* 937 F.2d at 306. However, where possession is not exclusive, there must be a nexus between the accused and the contraband. *United States v. Perry,* 747 F.2d 1165, 1171 (7th Cir.1984).

In this case, a reasonable jury could have concluded that Serrano knew the suitcase contained cocaine and that he had constructive, albeit not exclusive, possession of it. First, Serrano's conduct supports the conclusion that he had knowledge of the cocaine and participated in transporting it. He travelled using tickets purchased with cash. He acted nervous and conducted countersurveillance. He waited for luggage and left without claiming any. He lied to DEA agents. He denied ownership of a suitcase that was proven to belong to him; the suitcase contained snakeskin boots similar to those Serrano wore. Also, an identification tag with his name and an address that corresponded to one later found in his possession was attached to the suitcase. Serrano checked into a hotel, paid for the room with cash, and did not check out. He carried a lot of cash,

Chicago phone numbers, beeper numbers, and receipts that establish his use of aliases.

Second, the evidence supports the conclusion that Serrano was travelling with Fregoso and had the power to possess the cocaine in the suitcase that she checked. Fregoso's airline ticket envelope had the name Serrano written on it, the two left O'Hare airport together and were together at Midway airport the following day. Although Fregoso checked all three suitcases, one was proven to belong to Serrano. Consequently, the jury was not compelled to conclude that because Fregoso's name was on the baggage claim ticket, the suitcase containing the cocaine was exclusively hers.

The conclusion that Serrano had the power to possess the cocaine is further supported by the evidence that between the two of them, Serrano was in charge. Serrano said something to Fregoso before they left the baggage claim area without claiming any luggage. Serrano walked ahead of Fregoso and conducted countersurveillance. Serrano spoke to the agents first and translated for Fregoso. Finally, Serrano was observed buying airline tickets under assumed names at Midway airport.

■■■ Although we conclude that the evidence was sufficient to convict Serrano without Fregoso's testimony, our reliance on her testimony would be proper despite Serrano's challenge to her credibility. *United States v. Blas,* 947 F.2d 1320, 1325 (7th Cir. 1991) (quoting *United States v. Garner,* 837 F.2d 1404, 1423 (7th Cir.1987), *cert. denied,* 486 U.S. 1035, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988)), *cert. denied,* — U.S. —, 112 S.Ct. 1234, 117 L.Ed.2d 468 (1992). Determinations as to the credibility of witnesses are within the province of the jury and are not reviewed by the court. *Maholias,* 985 F.2d at 874. Even when a conviction rests upon the uncorroborated testimony of an accomplice, the verdict will be upheld unless the testimony is incredible as a matter of law. *United States v. Dunnigan,* 884 F.2d 1010, 1013 (7th Cir.1989). To be incredible as a matter of law, the testimony must be

---

1. Serrano does not argue that the government failed to prove that he intended to distribute the cocaine. Intent to distribute may be inferred

where the amount of cocaine involved is more than that needed for personal use. *United States v. Maholias,* 985 F.2d 869, 879 (7th Cir.1993).

incredible on its face, it must be "impossible under the laws of nature for the occurrence to have taken place at all." *Id.* Minor inconsistencies in the testimony do not render it legally incredible. *United States v. Villasenor,* 977 F.2d 331, 335 (7th Cir.1992) (quoting *Dunnigan,* 884 F.2d at 1013), *cert. denied,* —— U.S. ——, 113 S.Ct. 1340, 122 L.Ed.2d 723 (1993). While Fregoso's conduct at the airport was unusual and her claim of ignorance may be difficult to accept, Serrano has not established that Fregoso's version of the facts is impossible as a rational matter.

There being, in our opinion, sufficient evidence from which the jury could have concluded that Serrano was guilty of possession with intent to distribute cocaine, the judgment of the district court is AFFIRMED.