19 F.3d 1436
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Magnus A. WILSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ivan K. HUGGINS, Defendant-Appellant.
 Nos. 93-2109, 93-2148.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 9, 1993.
Decided March 24, 1994.
 
 1
 Before CUDAHY and ILANA DIAMOND ROVNER, Circuit Judges, and HUBERT L. WILL, District Judge.*
 
 ORDER
 
 2
 Magnus A. Wilson and Ivan K. Huggins appeal from jury verdicts finding them guilty of possession with the intent to distribute 330 grams of cocaine (see 21 U.S.C. Sec. 841(a)(1); 18 U.S.C. Sec. 2), of possession with the intent to distribute one kilogram of marijuana (see id.), and of using firearms in relation to a drug trafficking offense (see 18 U.S.C. Secs. 2 & 924(c)). Wilson, moreover, was convicted of being a felon in possession of a firearm (see 18 U.S.C. Secs. 922(g)(1) & 924(a)(2)). In this appeal, Wilson argues that the evidence at trial was insufficient to show that he constructively possessed the contraband. In addition, both Wilson and Huggins maintain that they were denied a fair trial when the district court refused to grant a severance. For the reasons discussed below, we affirm the convictions.
 
 BACKGROUND
 
 3
 In February 1992, Huggins and Aubrey Evans rented the upper unit of a duplex at 2773 North 45th Street in Milwaukee, Wisconsin. A federal warrant authorizing a search of this apartment was issued on November 4, 1992. Prior to executing the warrant, authorities established surveillance on the 45th Street location. They observed a yellow Cadillac and a red Ford Bronco parked in front of the residence.[1] At approximately 5:15 p.m., the surveillance officers observed two men leave the apartment and proceed to the street, where the men stopped to talk. It was then that members of the Milwaukee County Sheriff's Department SWAT team arrived to execute the search warrant, and the two men fled. One ultimately escaped, but the other, Marcus Adams, was apprehended. The officers found keys to the yellow Cadillac and $2,000 in cash on Adams. They later found a loaded revolver in the front seat of the Cadillac.
 
 
 4
 When the officers entered the 45th Street apartment to execute the warrant, they came upon both Wilson and Huggins. In searching the residence, they found approximately 330 grams of cocaine and one kilogram of marijuana in an unlocked kitchen pantry, and along with the drugs, a digital scale and seven boxes of plastic bags. They also found a pager on the living room mantle. A cabinet in the dining room housed two firearms, one of which was loaded, and an envelope containing more than $24,000 in cash lay open on the living room floor. Huggins was in possession of an additional $337.00 at the time of his arrest, whereas Wilson had $180.00. The officers also found a marijuana cigarette in Wilson's pocket.
 
 
 5
 After his arrest, Huggins gave a statement acknowledging that he lived in the apartment. However, he denied any knowledge of the drugs, firearms, or cash found there, and he also knew nothing of the two men who had been observed leaving the residence. Wilson similarly denied any knowledge of the contraband. He stated that he did not live in the apartment and that he had been there only to visit his friend Evans, who had leased the apartment with Huggins.
 
 
 6
 A four-count indictment was returned against Wilson and Huggins on November 10, 1992. Their joint jury trial began on January 19, 1993, and the jury returned verdicts of guilty as to both defendants on all counts on January 21. Both Wilson and Huggins appeal their convictions.
 
 DISCUSSION
 
 7
 A. Sufficiency of the Evidence as to Wilson.
 
 
 8
 Wilson first challenges the sufficiency of the evidence supporting his convictions. In particular, he maintains that there was insufficient evidence linking him to the contraband found in Huggins' apartment. In considering this argument, we review the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found Wilson guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. DePriest, 6 F.3d 1201, 1206 (7th Cir.1993). This standard does not permit us to reweigh the evidence or to reassess the credibility of witnesses. DePriest, 6 F.3d at 1206. Wilson specifically challenges the district court's denial of his motion for acquittal at the close of the government's case-in-chief. We review that challenge under a similar standard. We must consider " 'whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government.' " United States v. Hagan, 913 F.2d 1278, 1281 (7th Cir.1990) (quoting United States v. Reis, 906 F.2d 284, 292 (7th Cir.1990)); see also United States v. Church, 970 F.2d 401, 405 (7th Cir.1992), cert. denied, 113 S.Ct. 1009 (1993).
 
 
 9
 Wilson maintains that he was entitled to a judgment of acquittal because the government failed to prove that he lived in the 45th Street apartment. According to Wilson, the government failed to disprove his story that he was only there visiting a friend when the search warrant was executed. Wilson argues that the evidence clearly established that he resided instead at 2119 North 51st Street in Milwaukee and that he therefore should not have been held responsible for the contraband found in Huggins' apartment. We thus review the evidence that links Wilson to the 45th Street apartment.
 
 
 10
 First, even assuming that Wilson's official residence may have been 2119 North 51st Street, the government produced substantial evidence indicating that Wilson spent a good deal of his time at the 45th Street apartment. First, the owner of the apartment, Janice Cottrell, who had leased it to Huggins and Evans, and who lived in the lower duplex on the same property, testified that Wilson began to live in the apartment in May or June 1992. Cottrell indicated that Wilson's red Ford Bronco was typically parked on the street in front of the apartment. She also testified that by November 1992, when the search warrant was executed, she believed that Evans had moved out of the apartment and that it was then being occupied by Huggins, Wilson, and one other man.
 
 
 11
 Cottrell's testimony was corroborated by the physical evidence discovered in the course of the search. In addition to the contraband, the search also revealed the following evidence linking Wilson to the property: (1) two suitcases in the living room closet that contained luggage tags bearing Wilson's name; (2) a letter addressed to Wilson at the 45th Street address in a living room end table; (3) Wilson's driver's license in the same end table; (4) money transfer receipts and various other receipts, bills, and envelopes bearing Wilson's name; (5) airline tickets to Jamaica in Wilson's name; (6) a picture of Wilson's two children on the living room mantle; (7) a passport with Wilson's picture but a false name in one of the bedrooms; (8) additional receipts and a birthday card addressed to Wilson in the same bedroom; and (9) other documents bearing Wilson's name in the closet of a second bedroom where an empty gun case also was found under the bed. Significantly, these materials were not found in a single location but were scattered throughout the apartment, suggesting that Wilson was more than merely an infrequent visitor there.
 
 
 12
 The ultimate issue is of course not whether Wilson lived in the 45th Street apartment, but whether the government proved his constructive possession of the contraband found there. In that regard, the government must show that Wilson had "the ability to exercise control" over the narcotics and firearms--that is, that he had the power to possess them. United States v. Molinaro, 877 F.2d 1341, 1348 (7th Cir.1989); see also United States v. Hernandez, 13 F.3d 248, 252 (7th Cir.1994) ("Constructive possession is established when the evidence sufficiently demonstrates ownership, dominion, or control"); United States v. Martinez, 937 F.2d 299, 305 (7th Cir.1991). The government may meet its burden by showing that the defendant had dominion or control over the premises where the contraband was concealed. United States v. Galiffa, 734 F.2d 306, 316 (7th Cir.1984). "The exercise of control need not be exclusive to support a finding of possession." Hernandez, 13 F.3d at 252; see also Martinez, 937 F.2d at 306; United States v. Garrett, 903 F.2d 1105, 1110 (7th Cir.), cert. denied, 498 U.S. 905 (1990). Yet, where possession is not exclusive, the government must establish a sufficient nexus between the defendant and the contraband. Hernandez, 13 F.3d at 252.
 
 
 13
 We have no doubt that a reasonable jury could conclude that Wilson, in conjunction with Huggins and possibly others, had constructive, if not exclusive, possession of this contraband. Although Wilson had not signed the lease to the 45th Street apartment, the jury was entitled to conclude that he either lived there or spent a good deal of his time there by November 1992. He was found in the apartment when the search warrant was executed, and the owner of the apartment indicated that, based on the frequency with which she saw either Wilson or the red Ford Bronco, she believed that Wilson lived there. A search of the residence revealed many items belonging to Wilson, including mail addressed to Wilson at the 45th Street apartment, his suitcases, airline tickets to Jamaica, and a falsified passport. This evidence established that Wilson had sufficient control over the 45th Street apartment to enable the jury to conclude that he had constructive possession of the contraband found there. After all, implements of the drug trade were strewn throughout the apartment. See Galiffa, 734 F.2d at 316. The evidence was therefore sufficient to support Wilson's convictions.
 
 
 14
 B. Denial of Severance.
 
 
 15
 Wilson and Huggins both argue that the district court abused its discretion in denying their motions for a severance. Defendants maintain that because they both were found in the 45th Street apartment along with the drugs and firearms, their only defense was to argue that the other knew of and had constructive possession of the contraband. Wilson and Huggins thus contend that in light of these essentially "identical" and "mutually antagonistic defenses," it was impossible for the jury to believe and to acquit them both. We review the district court's denial of a severance for an abuse of discretion. United States v. Dimas, 3 F.3d 1015, 1020 (7th Cir.1993); United States v. Goines, 988 F.2d 750, 781 (7th Cir.), cert. denied, 114 S.Ct. 241, 483, 558 (1993). Such an order is rarely reversed, and only when a defendant has shown "severe prejudice." Goines, 988 F.2d at 781; see also United States v. Curry, 977 F.2d 1042, 1050 (7th Cir.1992), cert. denied, 113 S.Ct. 1357 (1993). Moreover, we must "presume that a jury will follow the instructions given to it and consider each defendant separately." Goines, 988 F.2d at 781; see also Zafiro v. United States, 113 S.Ct. 933, 939 (1993).
 
 
 16
 The Supreme Court recently emphasized the "vital role" that joint trials play in our criminal justice system. Zafiro, 113 S.Ct. at 937. The Court observed that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." Id.; see also United States v. Rivera, 6 F.3d 431, 437 (7th Cir.1993), cert. denied, 62 U.S.L.W. 3552 (1994).[2] It therefore refused to adopt a bright-line rule that would require severance whenever two defendants assert conflicting defenses and instead held that "a district court should grant a severance under [Fed.R.Crim.P.] 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 113 S.Ct. at 938; see also Dimas, 3 F.3d at 1020. We since have held that simple blame-shifting amongst the defendants "does not necessarily 'prevent a jury from making a reliable judgment about guilt or innocence." Goines, 988 F.2d at 781 (quoting Zafiro, 113 S.Ct. at 938); see also Rivera, 6 F.3d at 438.
 
 
 17
 We believe that the defenses advanced by both Wilson and Huggins amount to no more than simple blame-shifting. Both maintain that the drugs and firearms found in the apartment belonged to the other. They argue that their defenses were mutually antagonistic and therefore worthy of severance in that the acceptance of one's defense would necessarily preclude any chance that the other also would be acquitted. See, e.g., Dimas, 3 F.3d at 1020; United States v. Cochran, 955 F.2d 1116, 1121 (7th Cir.), cert. denied, 113 S.Ct. 460 (1992). But the defenses here are no more antagonistic than those the Supreme Court considered in Zafiro or that this court analyzed in Rivera. In each of those cases, the defendants advanced arguments similar to those of Wilson and Huggins here, maintaining that they knew nothing of the illegal activity and that a co-defendant was solely responsible. See Zafiro, 113 S.Ct. at 936; Rivera, 6 F.3d at 438. And both the Supreme Court in Zafiro and this court in Rivera affirmed the denial of severance motions. Zafiro, 113 S.Ct. at 938-39 (any risk of prejudice from mutually antagonistic defenses may be cured by appropriate jury instructions); Rivera, 6 F.3d at 438 (same). Neither defendant has questioned the instructions provided the jury here, which appropriately required separate consideration of the evidence as to each defendant with respect to each count. Moreover, we cannot agree that the blame-shifting defenses here made it impossible for the jury to acquit both defendants. The jury could have found that neither Wilson nor Huggins was responsible for the contraband and that the drugs and firearms instead belonged to one of the two individuals who were observed fleeing the premises shortly before execution of the search warrant. See Rivera, 6 F.3d at 438-39; Goines, 988 F.2d at 781. Yet the evidence was plainly sufficient for the jury to reject both defenses, which it apparently did, and to conclude that both Wilson and Huggins were involved with the contraband. See Zafiro, 113 S.Ct. at 939. We thus believe that the blame-shifting defenses here did not prevent the jury from making a reliable judgment about guilt or innocence.
 
 
 18
 Huggins also separately maintains that a joint trial deprived him of the opportunity to exclude prejudicial testimony and physical evidence relating to Paul Taylor, the brother of Wilson's girlfriend, who the government suggested may also have been involved in the drug operations here. The government attempted throughout defendants' trial to imply that Taylor was the individual who had accompanied Adams outside the apartment on November 4, 1992, and who had escaped when the officers arrived to execute the search warrant. Huggins maintains that in a separate trial, any evidence relating to Taylor would have been excluded because Taylor could be connected only to Wilson and not to him. We disagree. Adams and another individual were seen leaving Huggins' apartment as the officers arrived, and Adams was apprehended with $2,000 in cash. Moreover, documents, including a travel itinerary, were found inside the apartment that included the names of both Wilson and Taylor. Because Huggins had leased the apartment and was present when the search warrant was executed, this evidence, to the extent that it indicated use of the apartment for drug dealing, was certainly relevant and would have been admissible against Huggins even if he had been tried separately. Huggins would then have had the opportunity, as he did here, to attempt to disassociate himself from Adams, Taylor, and even Wilson. In any event, we discern no prejudice to Huggins from admission of evidence relating to Paul Taylor in the joint trial. Indeed, because the evidence linked Taylor to Wilson rather than to Huggins, it would seem to support Huggins' defense that he was not involved with the contraband. The district court did not abuse its discretion in denying a severance.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The Hon. Hubert L. Will of the United States District Court for the Northern District of Illinois, sitting by designation
 
 
 [1]
 A subsequent search of the Bronco revealed documents indicating that it belonged to Wilson
 
 
 [2]
 Fed.R.Crim.P. 8(b) provides that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Neither Wilson nor Huggins challenges the joint indictment here, nor could they, as it is clear that they are alleged to have participated in the same offense or series of offenses