**UNITED STATES of America, Plaintiff,**

v.

**Felipe Serrano HERNANDEZ, Defendant.**

No. 94 C 3199.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 7, 1994.

Brian Blanchard, Asst. U.S. Atty., U.S. Atty's. Office, Chicago, IL, for U.S.

Felipe Serrano Hernandez, pro se.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Presently before the court is Felipe Serrano Hernandez' petition for habeas corpus relief pursuant to 28 U.S.C. § 2255. In his petition, Hernandez contends that: (1) this court exceeded its authority in sentencing him, and imposed an "excessive" fine in violation of the Eighth Amendment; (2) the investigating officers failed to advise him of his *Miranda* rights in violation of the Fifth Amendment; (3) he was coerced by his attorney to give inculpatory statements, in concert with the prosecution, in violation of his Fifth and Sixth Amendment rights; and (4) he was deprived of effective assistance of counsel. For the reasons set forth below, we deny Hernandez' petition for a writ of habeas corpus.

### I. Background [1]

In August, 1992, Hernandez and a companion, Evelia Maria Fregoso flew into O'Hare International Airport. They were observed in the terminal by four Chicago police officers assigned to the Drug Enforcement Agency (DEA) task force. According to testimony at trial, Hernandez was looking around the gate area, while Fregoso appeared confused. The two proceeded to the baggage claim area, conversing in Spanish. When they reached the carousel, they stood apart from each other, waiting for the baggage to arrive. Hernandez paced for five or ten minutes after the luggage began to arrive, and then walked over to Fregoso. Hernandez spoke to her, and then they left the baggage claim area without retrieving any luggage. Two of the DEA agents followed the couple to the taxi loading area and began to speak with them. Hernandez claimed that he was not travelling with Fregoso, and that

---

**1.** The facts surrounding Hernandez' arrest are more fully set forth in *United States v. Hernandez,* 13 F.3d 248 (7th Cir.1994).

they had merely met on the plane. The officers ultimately asked Hernandez and Fregoso to return to the baggage claim with them, and Hernandez and Fregoso agreed. They pulled three suitcases from the carousel; all three had baggage claim tickets issued to Guadalupe Macias, the name on the ticket held by Fregoso, and one had an identification tag with the name and address of Felipe Serrano, the name on Hernandez' ticket.[2] However, both Serrano and Hernandez denied that they owned the luggage, and claimed that they had not checked any baggage. The officers then told them that they were free to go. The officers obtained a search warrant for the unclaimed suitcases, finding six kilograms of cocaine in one of them.

The following day, a separate group of DEA task force agents observed Hernandez and Fregoso at Midway airport. Hernandez, who was purchasing tickets, appeared nervous. One of the agents approached them and asked about their plans. Hernandez showed the officer the tickets he had purchased that morning with cash. When asked why the names on the tickets (Maria Gonzalez and Agrello Diaz) did not match those on the identification offered, Hernandez related the problem at O'Hare the previous evening. The agents at the respective airports conferred, and Hernandez and Fregoso were arrested. Hernandez was carrying over $600 in cash. Hernandez maintains that at no point before or after his arrest did the officers advise him of his *Miranda* rights.

On February 11, 1993, following a jury trial in this court at which he was represented by attorney Robert L. Rascia, Hernandez was convicted of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). At his sentencing hearing, held April 8, 1993, we sentenced Hernandez to 154 months imprisonment, followed by five years of supervised release, and imposed a fine of $4,000,000. In imposing this sentence, we stated, in relevant part:

> Mr. Hernandez, although he is only being sentenced for this offense, by his modus operandi obviously is not a neophyte in the transportation of drugs. His callous use of an innocent woman to help perpetuate the crime, however, is mitigated to some extent by his honesty with the law enforcement authorities in explaining her innocent conduct.
>
> Nevertheless, the seriousness of the offense, the amount of narcotics involved, the obvious unwillingness of the defendant to reveal his sources, the nature of the defense, all indicate that a substantial sentence is appropriate.
>
> . . . .
>
> I am going to order as a condition of that supervised release that if deported from this country, that he not return during that time period.
>
> I am going to order that there be a fine of $4,000,000, but that execution of that fine be delayed until the final six months of his supervised release, which means that if he comes back into this country and is apprehended, that fine will be a viable one at that time.

Transcript of Proceedings at 10–11 (April 8, 1993). We also informed Hernandez that he had a right to appeal both his conviction and the sentence, and that we would appoint an attorney for that purpose in the event he was unable to afford one. Hernandez did in fact appeal his conviction, challenging only the sufficiency of the evidence.[3] The Seventh Circuit affirmed, *United States v. Hernandez*, 13 F.3d 248 (7th Cir.1994), and on May 23, 1994, Hernandez filed the present petition.

## II. Discussion

It is well established that "a district court cannot reach the merits of an appealable issue in a section 2255 proceeding, unless that issue has been raised in a procedurally appropriate manner." *Theodorou v. United States*, 887 F.2d 1336, 1339–40 (7th Cir.1989). In other words, the failure to raise an issue on direct appeal bars a petitioner from raising that issue in a habeas proceeding, unless the petitioner makes a showing of good cause for and prejudice from

---

2. Hernandez' full name is Felipe Serrano Hernandez. Both tickets were paid for with cash.

3. Hernandez was represented both at sentencing and on appeal by attorney Kevin Milner.

that failure. *Liss v. United States,* 915 F.2d 287, 290 (7th Cir.1990) (citation omitted). It is undisputed that Hernandez did not raise any of the claims in the present petition on his direct appeal. We must therefore consider whether Hernandez can satisfy the "cause and prejudice" requirement.

■ With respect to most of his claims, Hernandez maintains that his failure to appeal or otherwise raise those claims resulted from ineffective assistance of counsel, and that this ineffective assistance of counsel thus establishes "cause" for his default.[4] We disagree. As the Seventh Circuit has held, "a defendant or petitioner 'has an obligation to take a minimal interest in his defense.' This obligation does not end at sentencing, but continues on appeal." *Crank v. Duckworth,* 969 F.2d 363, 366 (7th Cir.1992) (quoting *Henderson v. Cohn,* 919 F.2d 1270, 1272 (7th Cir.1990)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993). Hernandez maintains that the alleged errors were "most obvious," and yet offers no explanation as to why he did not encourage his attorneys to raise them at trial or on appeal, or indicate to this court his dissatisfaction with his attorneys. Criminal defendants

> must shoulder at least some responsibility in the attorney-client relationship and indicate to the court when, in their minds, appointed lawyers are either not doing their jobs or have ceased their representation entirely. Without such a minimal duty, defendants would be free to remain silent throughout the proceedings and only later challenge their attorneys' actions with direct and collateral attacks upon their convictions and sentences.

*Williams v. United States,* 805 F.2d 1301, 1307 (7th Cir.1986), *cert. denied,* 481 U.S. 1039, 107 S.Ct. 1978, 95 L.Ed.2d 818 (1987); *see also United States ex rel. Mares v. Ahitow,* No. 93 C 6248, 1994 WL 384019, at *1 (N.D.Ill. July 20, 1994) ("[W]e do not require that petitioners understand all of the intricacies of the criminal ... process. By the same token, however, a criminal defendant

may not simply sit by and do nothing, and then subsequently blame his attorney for his procedural default."). In short, we are unwilling to accept Hernandez' claim that he has established cause for failing to raise the *Miranda* and sentencing issues on appeal.

However, even if we allowed Hernandez to rest the entire blame for his procedural default on his attorney's shoulders, it is apparent that he is unable to establish prejudice from the default. Hernandez first claims that we effectively banished him from the United States. Specifically, Hernandez maintains that this court "impose[d] conditions that defendant/petitioner leave the country immediately after the expiration of his criminal confinement, and 'should he ever re-enter the United States this Court would have the fine of millions of dollars ... imposed and payable at once.'" Hernandez' contentions are simply incorrect. We did not order Hernandez deported. Of course, as Hernandez is an illegal alien who has been convicted of a felony, we expect that he will be deported upon his release from prison. However, that decision was not, and is not, ours to make. Instead, we stated at sentencing:

> I am going to order as a condition of that supervised release that *if* deported from this country, that he *not return during that* time period.

Transcript of Proceedings at 10 (April 8, 1993) (emphasis added). Accordingly, we merely provided that if the proper authorities decide that Hernandez is to be deported, we expect him to abide by that decision.

With respect to the fine, Hernandez suggests (and the government accepts that suggestion) that imposition of the fine is contingent upon his re-entry into this country following deportation, and therefore violates the Fifth Amendment's protection against double jeopardy and the Eighth Amendment's prohibition of cruel and unusual punishment. Again, however, the transcript belies Hernandez' assertion. At sentencing, we or-

---

**4.** Although Hernandez is not explicit in this regard, we assume that he intends the alleged ineffective assistance of counsel to act as cause for failure to raise on appeal the absence of *Miranda* warnings, the impropriety of the proffer

to the government, and the alleged defects in sentencing. As noted above, Hernandez also raises an independent claim of ineffective assistance of counsel, based upon these "failures" of his counsel.

dered that "execution of [the] fine be delayed until the final six months of his supervised release, which means that if he comes back into this country and is apprehended, that fine will be a viable one at that time." Transcript of Proceedings at 11 (April 8, 1993). In other words, the fine will become effective six months prior to the end of the supervised release period, regardless of whether Hernandez has been deported and reentered the country. Accordingly, there is nothing whatsoever "contingent" about the fine, Hernandez' assertions notwithstanding. His claims based upon the fine's "contingent nature" are therefore meritless.

■ Hernandez also contends that the fine was excessive, in violation of his Eighth Amendment rights. It is undisputed that the fine imposed was well within the permissible range for the offense.[5] The government, however, independent of Hernandez' general objection, notes that the Seventh Circuit has required that a court make specific findings regarding the appropriateness of a particular fine. *See United States v. Masters*, 924 F.2d 1362, 1369 (7th Cir.), *cert. denied*, 500 U.S. 919, 111 S.Ct. 2019, 114 L.Ed.2d 105 (1991); *cf.* United States Sentencing Commission, *Guidelines Manual*, § 5E1.2(d) (listing factors court is to "consider" in determining amount of fine). Of course, in sentencing Hernandez, we did in fact make several findings regarding the appropriateness of the sentence, including the fine. Specifically, we noted that Hernandez "obviously is not a neophyte in the transportation of drugs," and that he callously used an innocent woman to help perpetrate his scheme, although this latter factor was somewhat mitigated by his honesty with the investigating officers regarding her role. In addition, we explicitly based the sentence we imposed upon "the seriousness of the offense, the amount of narcotics involved, the obvious unwillingness of the defendant to reveal his sources, [and] the nature of the defense." Transcript of Proceedings at 10 (April 8, 1993). And although Hernandez notes that the presen-

tence investigation report noted that he had a net worth of $700, we seriously question the accuracy of Hernandez' representations in this regard. He paid for four airline tickets, two from Los Angeles to Chicago, and two for the return trip, with cash, and was arrested with over $600 in cash. Furthermore, the purpose of his visit was to distribute over $100,000 in cocaine. In short, it is entirely likely that. Hernandez has, or has access to, greater financial resources than he has acknowledged. *See, e.g., United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir.1991) (noting significant financial resources typically available to those involved in drug trafficking); *see also* § 5E1.2 Application Note 6.[6] Under these circumstances, the amount of the fine was clearly appropriate and justified, and we therefore decline to reconsider it.

■ Hernandez' next claim is that the DEA agents failed to advise him of his right to remain silent, and violated his Fifth Amendment rights. It is well established that an individual must be informed of his Fifth and Sixth Amendment rights, pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), whenever "a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983)). *See also Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612 (rule becomes applicable when suspect "has been taken into custody or otherwise deprived of his freedom of action in any significant way"). Based upon these formulations, it is clear that Hernandez was not entitled to *Miranda* warnings when he and Fregoso were interviewed at O'Hare and Midway Airports, because they were not in custody at the time. *See United States v. Stephenson*, 924 F.2d 753, 760 (8th Cir.1991) (court found no custodial stop and, therefore, no right to *Miranda* warnings under similar

---

**5.** *See* 21 U.S.C. § 841(b)(1)(A)(ii) (authorizing fine of up to $8,000,000 under these circumstances).

**6.** Other factors identified by the Sentencing Commission and the Seventh Circuit, including restitution obligations, civil obligations, and previous fines, are not present in this case, and therefore merit no further consideration.

facts). Hernandez was not handcuffed, surrounded by officers, or otherwise restrained.[7] The agents at O'Hare and Midway asked Hernandez to reply with their requests, but there was no testimony at trial that they ever used force, or suggested that compliance was required. Furthermore, both encounters took place in the public areas of the airport terminals. Under these facts, it is apparent that the interviews were not "custodial," and, as a result, *Miranda* warnings were not required. *Compare United States v. Fazio*, 914 F.2d 950, 955 (7th Cir.1990) (suspect not in custody when officers directed him to sit in unlocked office in his restaurant while they executed a search warrant) *with United States v. Smith*, 3 F.3d 1088, 1097–98 (7th Cir.1993) (suspect in custody when he was frisked, handcuffed, and directed to sit in a particular place by the road).[8]

Hernandez next suggests, albeit in his reply brief, that he was "mis-advised and coerced" into making a proffer to the government in exchange for the government's withdrawal of its notice pursuant to 21 U.S.C. § 851.[9] Although the basis for Hernandez' claim is not clear, we perceive two possibilities. First, he links his "proffer" objection to the *Miranda* objection, suggesting that if his *Miranda* rights had not been violated, he would not have been arrested, and no proffer would have been necessary. As we concluded above, however, Hernandez has not demonstrated that his Fifth Amendment rights were violated; as a result, his "proffer"

claim, at least to the extent it is connected to his previous objection, must fail.

■■■ Hernandez also suggests that the proffer was born of an "'unholy marriage' between Government Counsel and Defense Counsel." From this language, we can only assume that he is suggesting that his counsel was ineffective. To support such a claim, however, a habeas petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), and that the petitioner was prejudiced by the ineffectiveness, *id.* at 692, 104 S.Ct. at 2067. It is clear that Hernandez can not satisfy this burden. He was facing a mandatory minimum sentence of twenty years and overwhelming evidence against him. In return for a proffer of information, none of which could be used directly against him, and which in large part rightfully exonerated Fregoso, the government withdrew its Section 851 notice. Under the facts before us, we cannot conclude that the conduct of Hernandez' attorney in facilitating such a proffer fell below an objectively reasonable standard; on the contrary, it was entirely sensible. In short, regardless of how we characterize Hernandez' "proffer" objection, it is clearly unmeritorious.

Hernandez' remaining claim is that he was deprived of effective assistance of counsel throughout the course of his criminal proceedings. In support of this claim, he points to the above "errors." However, as we have

---

7. Hernandez claims that he and Fregoso felt constrained "because we were never told that the American Officers, quite the opposite of Mexican Officers, would not subject us to torture and even possible death or crippling, if we did not 'cooperate'...." Hernandez' assertion is, at best, disingenuous. His presentence investigation report reveals that he has been arrested and/or convicted over the years for a variety of crimes, including drunk driving, receiving stolen property, carrying a concealed weapon, hit and run property damage, selling a controlled substance, and possession and sale of a controlled substance, and has been deported at least once. He does not claim that he was mistreated in any of his several encounters with American law enforcement officials. We therefore refuse to accept his claim that he feared torture and/or death in the present case.

8. Although it is difficult to discern from Hernandez' habeas petition, he may also be alleging a *Miranda* violation at the time of his arrest; that is, it appears that the officer failed to advise Hernandez of his *Miranda* rights after he was arrested. While he was clearly in custody at that time, he does not allege that he made any incriminating statements. On the contrary, he apparently refused to say anything whatsoever until he spoke with an attorney. As a result, even if Hernandez has stated a *Miranda* violation, he can not demonstrate that he was prejudiced by it, and is thus not entitled to habeas relief. *See Reynolds v. Lockhart*, 497 F.2d 314, 315 (8th Cir.1974).

9. Under Section 851, Hernandez would have been subject to a mandatory minimum sentence of twenty years.

concluded that all of his claims fail on the merits, it is apparent that Hernandez can satisfy neither prong of the *Strickland* test set forth above. Accordingly, his effective assistance of counsel claim must likewise fail.

### III. Conclusion

For the reasons set forth above, Hernandez' petition for a writ of habeas corpus is denied. It is so ordered.