UNITED STATES of America,
Plaintiff–Appellee,

v.

Antonio CHAIREZ, also known as Joel
Chairez, Defendant–Appellant.

No. 92–4095.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 17, 1993.

Decided Aug. 29, 1994.

---

824

Rodney Cubbie (argued), Office of the U.S. Atty., Milwaukee, WI, for plaintiff-appellee.

Richard L. Zaffiro, Wauwatosa, WI (argued), for defendant-appellant.

Before PELL, CUDAHY and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

Antonio Chairez was convicted for violating 18 U.S.C. § 924(c), after a loaded gun was discovered under the passenger seat of a car in which Chairez had been sitting. Pursuant to a bench trial the district court found that Chairez had personally possessed the firearm. We have determined that the evidence was insufficient to establish Chairez' direct personal liability and remand for a determination whether Chairez may be guilty under the *Pinkerton* doctrine.

I.

Chairez was sitting in the passenger seat of a 1985 Oldsmobile Cutlass driven by Edgar Cruz; the car contained twenty pounds of marijuana. Cruz and Chairez arrived at 1713 West Becher in Milwaukee where Jacobo Huerta waited. Huerta had already arranged the sale of the marijuana to Raymond Melick. Unbeknownst to Huerta, Melick was a Drug Enforcement Agency (DEA) agent. Several other DEA agents, and Detective Thomas Gorecki of the City of Milwaukee Police, knowing of the planned sale, were engaged in surveillance of the area. After Huerta retrieved the marijuana from the Oldsmobile, the Oldsmobile circled the area for the next hour and one-half. On one occasion Cruz and Chairez left the car and stood in a nearby alley.

Members of the DEA Task Force and Detective Gorecki eventually stopped the Oldsmobile. After they removed Cruz and Chairez from the car, Detective Gorecki reached under the front seat on both the driver's side and the passenger side. He recovered a loaded .38 caliber Rossi handgun from a place approximately six inches under the passenger seat.[1]

The car was not registered to either Cruz or Chairez; it was registered to an unidentified woman. The government did not investigate her or learn anything about her relationship to Cruz or Chairez. There was a serial number on the gun, but no check was performed on the identity of the owner due to the age of the revolver. There were no fingerprints on the gun. No one spoke to Chairez or Cruz about the gun.

Chairez was charged in a three-count indictment with conspiring to possess with intent to distribute twenty pounds of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846, distributing twenty pounds of marijuana, in violation of 21 U.S.C. § 841(a)(1), and knowingly using or carrying a firearm during or in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) and (2). Pursuant to a written plea agreement, Chairez pleaded guilty to the distribution charge, and the conspiracy charge was dismissed.

A bench trial followed on the firearm charge. Chairez testified that he had known Cruz for two or three months. When Chairez initially entered the car, Chairez thought that he and Cruz were going to get a beer. Once in the car Chairez saw the marijuana, and Cruz told him that they were going to take the marijuana to someone. Chairez testified that he had not known Cruz to deliver drugs in the past. He also testified that he had no knowledge of the gun under his seat.

The district court determined that Chairez was not credible and found him guilty of possessing a firearm in connection with drug trafficking activity. Chairez received a fif-

1. The record does not indicate whether the car had a bench seat which stretched across the car or bucket-type seats for the driver and passenger.

teen-month sentence for the conviction for distribution and a consecutive sixty-month sentence for violating § 924(c). Chairez argues on appeal that the evidence was insufficient to find that he knowingly possessed the firearm.

## II.

A conviction under § 924(c) requires the government to prove beyond a reasonable doubt that the defendant: 1) possessed a gun; and 2) used it in relation to a drug offense. *United States v. Carson,* 9 F.3d 576, 582 (7th Cir.1993), *petition for cert. filed* (May 16, 1994); *United States v. Edun,* 890 F.2d 983 (7th Cir.1989). Chairez challenges the sufficiency of the evidence on the first requirement: his possession. He argues that the evidence presented at trial was insufficient to prove that he knowingly possessed the gun.[2]

In reviewing a challenge to the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A defendant must know of the firearm's existence in order to have possession or control of it. *Edun,* 890 F.2d at 987; *see United States v. Wilson,* 884 F.2d 174, 179 (5th Cir.1989) ("requisite mental state for a violation of § 924(c) is knowledge of the facts constituting the offense"); *United States v. Nelson,* 733 F.2d 364, 370–71 (5th Cir.), *cert. denied,* 469 U.S. 937, 105 S.Ct. 341, 83 L.Ed.2d 276 (1984).

But the government failed to produce even a shred of evidence that Chairez knew about the gun. The government rather maintained that, because the gun was found under Chairez' seat during a drug transaction, Chairez must have known of the gun's existence. The government supported its case with expert testimony that firearms are usually involved in drug transactions. The expert testified that the firearm in question was very old, easily concealable and strategically placed. He also testified that "in as high as sixty percent of the [narcotics] cases there's a firearm somewhere in the case." Tr. at 41.

The mere fact that both Chairez and the gun were in the same car is an insufficient basis for a factfinder to determine that Chairez had knowledge of a firearm. *United States v. Soto,* 779 F.2d 558, 560 (9th Cir. 1986) (where firearm was found underneath defendant's seat, court held "mere presence as a passenger ... does not establish possession" and "proximity of a weapon ... goes only to its accessibility, not to the dominion or control"), *cert. denied,* 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 70 (1987); *United States v. Blue,* 957 F.2d 106, 108 (4th Cir. 1992) (officer's claim that he saw defendant's shoulder "dip" and the discovery of a pistol under defendant's seat not enough to show possession) (citing *United States v. Soto* with approval); *United States v. Flenoid,* 718 F.2d 867, 868 (8th Cir.1983) (mere presence as a passenger does not establish possession, but testimony that defendant placed something in spot where weapon was later found can support such a finding); *see United States v. Evans,* 950 F.2d 187, 192 (5th Cir. 1991) (evidence of knowledge insufficient where defendant drove car that had been driven immediately before by other drug dealers, gun was found on rear floorboard and officer observed him lean onto the floorboard); *see also United States v. Windom,* 19 F.3d 1190, 1200 (7th Cir.) (mere proximity, mere presence or mere association is insufficient to support a finding of possession), *cert. denied,* —— U.S. ——, 115 S.Ct. 174, —— L.Ed.2d —— (1994).

The government presented no evidence that Chairez had ever carried a firearm, or that he made a gesture towards the gun,

---

2. The issue of knowledge here is distinguishable from the question presented in a line of cases regarding § 924(c) in which the proximity of the firearm established *use* in furtherance of a crime; in those cases, knowledge of the firearm's *existence* had already been established. *Edun,* 890 F.2d at 987 (distinguishing "use" requirement from "knowledge" requirement); *see Carson,* 9 F.3d at 582 (strategic proximity evidence of "use") (citing *United States v. Woods,* 995 F.2d 713, 717 (7th Cir.1993)). In those cases involving use, mere proximity to a firearm will establish that the firearm was used in furtherance of a crime.

*United States v. Ocampo,* 890 F.2d 1363 (7th Cir.1989) (sufficient evidence where officer observed the defendant bend over inside a vehicle, place an object on the floor and attempt to kick it under the seat); *United States v. Coe,* 718 F.2d 830 (7th Cir.1983) (sufficient evidence where defendant reached for glove compartment), or that he acted suspiciously when approached by the officers. *Cf. United States v. Bell,* 954 F.2d 232, 236 (4th Cir.1992) (evidence of defendant's presence in the car, brief attempt to leave when the car was stopped, apparent relationship with co-defendant on other occasions and nervous response to the search "sufficient, though barely so" to infer possession of drugs). No one asked Chairez about the gun and the gun was not traced to him; the gun did not have fingerprints that could have been his. *United States v. Wilson,* 922 F.2d 1336, 1339 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 155, 116 L.Ed.2d 120 (1991) (gun found under the mattress in an apartment where the defendant sometimes spent the night could have been "possessed" by the defendant because it had fingerprint that could have been the defendant's). Chairez did not own or drive the car or exercise any control or dominion over the car, *Edun,* 890 F.2d at 987 (defendant had exclusive control over the car in which gun was found); *United States v. Whitley,* 905 F.2d 163 (7th Cir. 1990) (court determined defendant had dominion and control over gun found in defendant's apartment); *United States v. Garrett,* 903 F.2d 1105, 1111 (7th Cir.), *cert. denied,* 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990) (in a conviction under § 922 defendant demonstrated constructive possession by attempting to open car with proper set of keys where a bag of cocaine and a weapon were found under the driver's seat), and the gun was not found inside anything which belonged to Chairez. *See United States v. Hernandez,* 13 F.3d 248, 252 (7th Cir.1994) (one factor that demonstrated possession of drugs was that defendant had claim ticket to suitcase containing drugs); *United States v. Barbee,* 968 F.2d 1026, 1035 (10th Cir.1992) (defendant exercised control over briefcase that contained gun). The government produced no evidence that the defendant touched the gun, *see United States v. Gutier-*

*rez,* 978 F.2d 1463, 1466 (7th Cir.1992) (defendant had pistol in waistband of pants), owned a gun or had ever been given a gun, *see United States v. Wight,* 968 F.2d 1393, 1397 (1st Cir.1992) (firearm discovered in van used to transport drugs combined with evidence that a gun was delivered to defendant's residence the day before the drug transaction enough to sustain conviction).

■ Although the possession of firearms is common in the course of drug trafficking, *United States v. Allen,* 930 F.2d 1270, 1275 (7th Cir.1991), a defendant's presence during a drug transaction is not sufficient to prove that the defendant knew firearms were present. *See United States v. Powell,* 929 F.2d 724, 728 (D.C.Cir.1991). *Cf. Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979) ("mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person") (citing *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)). The only evidence that demonstrated Chairez' knowledge of the gun was his presence as a passenger in a car, driven by someone else and owned by an unidentified third party, during a drug transaction, while a loaded gun lay under his seat. Although the district court asserted that it was making a credibility determination, even in the absence of Chairez' testimony, the government did not meet its burden of proving knowledge on the part of Chairez.

■ Lurking in the background is an alternative theory of liability: the *Pinkerton* doctrine. *See Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Under the *Pinkerton* doctrine a defendant may be found guilty of violating § 924(c) if a co-conspirator used or carried a firearm during and in relation to the conspiracy. *United States v. Goines,* 988 F.2d 750, 774 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993). A co-conspirator can be held vicariously liable under *Pinkerton* despite his claims that he did not know or suspect the gun's presence in the car. *Carson,* 9 F.3d at 591. This, it appears, might have been a likely theory under which to prosecute Chairez for possession of the firearm. When a loaded gun is

found within reach during a drug transaction, a factfinder might reasonably infer that the gun was intended for the furtherance of a drug conspiracy. The government, therefore, might have pursued this prosecution under *Pinkerton* by attempting to prove that Chairez was involved in a conspiracy beyond a reasonable doubt and that it was reasonably foreseeable to him that a member of the conspiracy would possess a gun in furtherance of the conspiracy. *Id.; Goines,* 988 F.2d at 774.

Of course, in order to convict a defendant under a *Pinkerton* theory there first must be a conspiracy. Although the government initially charged Chairez with conspiracy, Chairez pleaded guilty only to the charge of distribution, and the conspiracy charge was dismissed. But the absence of a conspiracy charge does not preclude the district court from applying a *Pinkerton* theory to the gun charge if the evidence so suggests. *See United States v. Macey,* 8 F.3d 462, 468 (7th Cir.1993) (indictment need not include a count of conspiracy in order to take advantage of conspiracy doctrines); *see also* Seventh Circuit Jury Instructions, Vol. III, pp. 6–7 (1986) (containing instruction to be used when conspiracy is not charged in the indictment). If the government proved beyond a reasonable doubt that Chairez was a member of a conspiracy at the time that it was reasonably foreseeable that a member of a conspiracy used or carried the firearm in furtherance of the conspiracy, then Chairez might be found guilty of violating § 924(c).

During closing argument in the district court the government focused on Chairez' knowledge of the gun's presence. But the government also made what may be characterized as at least an implicit *Pinkerton* argument: that it could prove Chairez' guilt by proving that "this firearm and its use was reasonably foreseeable to this particular defendant in this particular case." Tr. at 57. While the government emphasized its *preference* that the court find Chairez personally and directly liable, it continued to discuss Chairez' potential liability based on his involvement in the drug transaction. The government argued that Chairez willingly participated in the drug transaction and further asserted that evidence that sixty percent of all drug transactions involve firearms was indicative of what Chairez should have known. In fact, the government's expert testimony on this point could not have gone so much to his personal and direct responsibility for placing the gun but would have been more relevant to what was foreseeable to him as a conspirator under the circumstances. And the government's comments indicate that it was not totally discounting the alternative route of liability founded upon the *Pinkerton* doctrine.

The district court seemed to agree with the government's characterization that this could be a *Pinkerton* case, but declined to rest a finding of guilt on this theory, or to make the requisite subsidiary findings.[3] This refusal by the district court, of course, eliminates any possibility that we could affirm on a *Pinkerton* theory. It may also eliminate the possibility of our remanding to the district court for further findings on such a theory. And the government on appeal was so chary of defending a *Pinkerton* rationale that there is certainly a substantial case for waiver of the point.[4] Nonetheless, de-

---

3. The district court stated:
   This case could be resolved on a simple Pinkerton theory of the defendant having responsibility because he was a co-conspirator with the driver, Mr. Cruz, of that automobile.... I would have no trouble concluding that the weapon had been placed there by Mr. Cruz. And once this defendant saw that large amount of marijuana in that car and got in that automobile he became a willing participant in this venture.... He became a willing participant, a co-conspirator in the criminal adventure, and accordingly he is responsible for all the other acts done by a co-conspirator. So on a Pinkerton theory even if he didn't know the gun was there he is criminally responsible for

it because his co-defendant obviously knew, according to his own testimony. But I don't have to resort to a Pinkerton type analysis of the evidence in this case to find that this defendant is guilty on Count 3.

4. In its brief on appeal the government stated:
   The district court specifically did not find Chairez guilty of the 924(c) violation under a Pinkerton theory.... The district court's comments regarding Pinkerton liability were an observation, not a finding, that even if the court believed Chairez' testimony and concluded that Cruz had placed the gun in the car the defendant's knowledge of the large amount of

spite all these difficulties, we think the government did adduce evidence in support of a *Pinkerton* theory; the district court did not *reject* the theory, although it preferred another, and even on appeal the government did not outright renounce *Pinkerton* as a theory; the remarks of government counsel went more directly to interpreting what the district court had found, than to dealing definitively with *Pinkerton* as an alternative theory. Hence, we think it would be permissible to remand the matter for further findings on the *Pinkerton* point.

The district court indicated that it *might be inclined to make such a finding if necessary.* There was insufficient evidence to establish Chairez' personal liability for possession of the firearm, but we cannot determine the applicability of the *Pinkerton* doctrine in the absence of a finding by the district court. On remand the district court should make a finding about whether the evidence presented at the trial proved beyond a reasonable doubt that Chairez was involved in a conspiracy to distribute drugs and, if so, whether the evidence established that it was reasonably foreseeable that a member of the conspiracy would be carrying a firearm in furtherance of that conspiracy. The district court should make any other appropriate findings relevant to *Pinkerton* liability and a determination of guilt or innocence based on these findings. We, of course, express no view as to Chairez' liability on a *Pinkerton* theory.

VACATED AND REMANDED.

PELL, Circuit Judge, dissenting.

Despite the disclaimer of the possibility of this court itself affirming on a *Pinkerton* theory, the net effect of the majority opinion is that, upon remand, the district court having already expressed itself on the *Pinkerton* theory, a judgment will be entered on the gun count and the fifteen month sentence for

marijuana involved in the transaction and his actions after the delivery made the presence of the weapon foreseeable to Chairez.

Gov't Br. at 16–17. When questioned at oral argument about the statement in the brief, the Assistant United States Attorney stated that the government had argued *Pinkerton* to the district court and that the court had "in effect" made a

the distribution count on a guilty plea will be followed by a sixty month sentence for violating § 924(c). Because it appears to me that the net result of the remand will be a miscarriage of justice, I respectfully dissent.

Perhaps, as the majority opinion states, "the district court did not make any 'subsidiary findings' on the *Pinkerton* theory," the thinking of that court was that:

he became a willing participant, a co-conspirator in the criminal adventure:—so, on a *Pinkerton* theory, even if he did not know that the gun was there, he became criminally responsible for it.

Yet, the district judge refrained from resting guilt on *Pinkerton*. Instead, the court rested its decision on a credibility determination and decided that the government had met its burden of producing sufficient evidence to prove that Chairez knowingly possessed the firearm. The majority opinion correctly disagrees and states that the government did not meet its burden of proving knowledge on the part of Chairez.

Likewise, the government, neither in the district court nor in its appearance in this court, chose to pursue in any meaningful way affirmance on the basis of *Pinkerton*. Essentially, in argument before this court, the government's argument was based on direct personal liability on the gun count. The majority opinion succinctly and correctly states: "and the government on appeal was so chary of defending a *Pinkerton* rationale that there is certainly a substantial case for waiving of the point."

The applicability of *Pinkerton* to the facts of this case would have seemed so evident to the government and, indeed, the district court, that one wonders why it was not used. Although this was never advanced as a reason, indeed no reason was articulated, it seems clear to me that the reason should have been based on what occurred prior to the evidentiary trial.

finding that Chairez was involved in a conspiracy. When we asked whether his answer was inconsistent with the statement in the brief, the AUSA conceded that the court did not make a finding that Chairez was guilty under *Pinkerton*, but stressed that the district court declined to find Chairez guilty under *Pinkerton* because it did not have to.

There were three counts: 1) that Chairez and others did conspire to distribute approximately 20 pounds of marijuana, 2) that he engaged in its distribution, and 3) that he did knowingly use and/or carry a firearm while engaged in the distribution. Ultimately, a partial plea agreement was negotiated. Pursuant to its terms, Chairez agreed to plead guilty to count 2, the distribution charge, in return for the government's agreement to dismiss the conspiracy charge. Pursuant to this agreement, the conspiracy charge was dismissed.

The linchpin, without which *Pinkerton* is inoperative, is that there must be a conspiracy. It may well be, as the majority opinion states, that the absence of a conspiracy charge does not preclude a district court from applying a *Pinkerton* theory to the gun charge if the evidence so suggests. This is not the situation here. The conspiracy count was in the criminal complaint. It was removed from the proceeding pursuant to a plea agreement. To give good faith to that agreement, it should not be brought in by the back door as the essential component that it is.

With the volume of criminal litigation in the courts today, and given the priority it has, plea bargaining is an essential ingredient in orderly and prompt disposition of cases. If the plea agreement is not given full effect, there enters, or could enter, a lack of good faith on the part of the government. That the government and the district court have refrained from relying on *Pinkerton*, which is inapplicable without the essential ingredient of conspiracy, is, I would like to think, because of the factor of good faith, even though they have not so indicated. Chairez should not be subject to a substantially enhanced sentence because of an element that supposedly had been removed from the case.

For the reasons stated herein, I would reverse and set aside the district court's judgment holding Chairez guilty of a violation of § 924(c).